1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 7  HEATHER E., | |
| 8  Plaintiff, | NO. 1:23-CV-3064-TOR |
| 9  v. | ORDER REVERSING COMMISSIONER'S DENIAL OF BENEFITS |
| 10  KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| 11 | |
| 12  Defendant. | |

13       BEFORE THE COURT is Plaintiff's Appeal of the Social Security

14  Commissioner's Denial of Title XVI Benefits (ECF No. 9).  The Court has

15  reviewed the administrative record and the parties' completed briefing, and is fully

16  informed.  For the reasons discussed below, the order of the Social Security

17  Commissioner is REVERSED.

18                                              **JURISDICTION**

19       The Court has jurisdiction over this case under 42 U.S.C. §§ 405(g),

20  1383(c)(3).

1

## STANDARD OF REVIEW

2      A district court's review of a final decision of the Commissioner of Social

3   Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

4   limited: the Commissioner's decision will be disturbed "only if it is not supported

5   by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

6   1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

7   relevant evidence that "a reasonable mind might accept as adequate to support a

8   conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently,

9   substantial evidence equates to "more than a mere scintilla[,] but less than a

10  preponderance." *Id.* (quotation and citation omitted).  In determining whether this

11  standard has been satisfied, a reviewing court must consider the entire record as a

12  whole rather than searching for supporting evidence in isolation.  *Id.*

13      In reviewing a denial of benefits, a district court may not substitute its

14  judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

15  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

16  rational interpretation, [the court] must uphold the [administrative law judge's

17  (ALJ's)] findings if they are supported by inferences reasonably drawn from the

18  record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

19  court "may not reverse an ALJ's decision on account of an error that is harmless."

20  *Id.*  An error is harmless "where it is inconsequential to the [ALJ's] ultimate

nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing harm. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [she] is not only unable to do [her] previous work[,] but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

1    If the claimant is not engaged in substantial gainful activities, the analysis

2    proceeds to step two.  At this step, the Commissioner considers the severity of the

3    claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

4    "any impairment or combination of impairments which significantly limits [her]

5    physical or mental ability to do basic work activities," the analysis proceeds to step

6    three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this

7    severity threshold, however, the Commissioner must find that the claimant is not

8    disabled. *Id.*

9    At step three, the Commissioner compares the claimant's impairment to

10    several impairments recognized by the Commissioner to be so severe as to

11    preclude a person from engaging in substantial gainful activity.  20 C.F.R. §

12    416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

13    enumerated impairments, the Commissioner must find the claimant disabled and

14    award benefits.  20 C.F.R. § 416.920(d).

15    If the severity of the claimant's impairment does meet or exceed the severity

16    of the enumerated impairments, the Commissioner must pause to assess the

17    claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

18    defined generally as the claimant's ability to perform physical and mental work

19    activities on a sustained basis despite his or her limitations (20 C.F.R. §

20    416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

1       At step four, the Commissioner considers whether, in view of the claimant's

2   RFC, the claimant is capable of performing work that he or she has performed in

3   the past ("past relevant work").  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

4   capable of performing past relevant work, the Commissioner must find that the

5   claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

6   performing such work, the analysis proceeds to step five.

7       At step five, the Commissioner considers whether, in view of the claimant's

8   RFC, the claimant is capable of performing other work in the national economy.

9   20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

10  must also consider vocational factors such as the claimant's age, education and

11  work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

12  Commissioner must find that the claimant is not disabled.  20 C.F.R. §

13  416.920(g)(1).  If the claimant is not capable of adjusting to other work, the

14  analysis concludes with a finding that the claimant is disabled and is therefore

15  entitled to benefits.  *Id.*

16      The claimant bears the burden of proof at steps one through four above.

17  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

18  step five, the burden shifts to the Commissioner to establish that (1) the claimant is

19  capable of performing other work; and (2) such work "exists in significant

20  numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 18, 2018, Plaintiff protectively filed an application for Title XVI supplemental security income benefits, alleging a disability onset date of December 31, 2017. Tr. 1197. The application was denied initially and upon reconsideration. Tr. 38. On July 7, 2020, a telephonic hearing was held before an ALJ. Tr. 48. On July 30, 2020, the ALJ denied Plaintiff's claim. Tr. 37. On October 16, 2020, the Appeals Council denied review. Tr. 7.

On December 31, 2021, this Court remanded Plaintiff's case for the ALJ to reconsider the severity of Plaintiff's bilateral carpal tunnel syndrome, reevaluate Plaintiff's physical symptom testimony, reassess the opinions of Doctors Metoyer, Hurley, and Kuppussamy, and account for lay witness testimony. Tr. 1266, 1272-74, 1282-84.

A telephonic rehearing was held on January 24, 2023, before a different ALJ. Tr. 1192. On February 27, 2023, the ALJ concluded Plaintiff was not under a disability as defined in the Social Security Act. Tr. 1183.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 18, 2018, the date of the application. Tr. 1169. At step two, the ALJ found Plaintiff had the following severe impairments: chronic obstructive pulmonary disease, bullous lung disease,

status post bullectomy, endometriosis, carpal tunnel syndrome, major depressive

disorder, and posttraumatic disorder (PTSD).  Tr. 1170.  At step three, the ALJ

found that Plaintiff's impairments did not meet or medically equal the severity of a

listed impairment.  *Id.*  The ALJ then found that the Plaintiff had the RFC to

perform light work with the following limitations:

> [Plaintiff] can sit, stand, walk 6 hours each; bilateral upper extremity
> gross handling is frequently; she is unlimited in all postural activities
> except she can occasionally climb ladders, ropes, scaffolds; she [sic]
> occasionally stoop and crawl; never climb ladders, ropes, scaffolds;
> she must avoid concentrated exposure to extreme heat, humidity,
> pulmonary irritants; she can carry out simple routine task work; she
> can work superficially and occasionally with the general public; she
> can work in the same room with coworkers but no coordination of
> work activity; and she can adapt to simple, occasional workplace
> changes.

Tr. 1172.

At step four, the ALJ found that Plaintiff was unable to perform any past

relevant work.  Tr. 1181.  At step five, the ALJ found that, considering Plaintiff's

age, education, work experience, RFC, and testimony from a vocational expert,

there were other jobs that existed in significant numbers in the national economy

that Plaintiff could perform, including as a routing clerk and marker.  Tr. 1182.

Based on the foregoing, the ALJ concluded Plaintiff was not under a disability, as

defined in the Social Security Act, from January 18, 2018, through February 27,

2023.  Tr. 1183.

# ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff submits the following issues for this Court's review:

1. Whether the ALJ properly assessed if Plaintiff met Listing 3.02D;

2. Whether the ALJ properly assessed Plaintiff's subjective symptom testimony; and

3. Whether the ALJ properly assessed the medical testimony of Plaintiff's treating doctors.

ECF No. 9 at 2.

## I. Listing 3.02D

Plaintiff argues that the ALJ improperly concluded that she did not have an impairment or combination of impairments that met or medically equaled the severity of Listing 3.02D.  ECF No. 9 at 4; Tr. 1170.

Listing 3.02 includes impairments due to chronic respiratory disorders. Under Listing 3.02D, a claimant may be disabled due to:

> Exacerbations or complications requiring three hospitalizations within a 12-month period and at least 30 days apart (the 12-month period must occur within the period we are considering in connection with your application or continuing disability review).  Each hospitalization must last at least 48 hours, including hours in a hospital emergency department immediately before the hospitalization.

20 C.F.R. Pt. 4, Subpt. P., App. 1 (Listings) § 3.02D.

Plaintiff argues she met this requirement because she was hospitalized on three occasions in a twelve-month period from 2017 to 2018, for at least 48 hours each, and each visit lasting 30 days apart. ECF No. 9 at 4. She recounts that she was hospitalized from March 28 to 30, 2017; December 13-14, 22-24, and 25-29, 2017; January 30 to February 1, 2018; and February 1 to February 6, 2018. *Id.* (citing Tr. 291, 293, 382, 401, 530, 516, 549). Defendant argues Plaintiff did not meet the requirements of this listing because the relevant period in issue was from January 18, 2018 (the date Plaintiff filed for disability) forward, and neither the March nor December hospitalizations took place during that period. ECF No. 13 at 5. Plaintiff responds that she met this because her second cluster of hospitalizations began in December 2017, mere days before she alleged her disability first began on December 31, 2017. ECF No. 14 at 4.

The Court finds Defendant's reading of the Listing more persuasive. The Listing specifically dictates that "the 12-month period must occur within the period we are considering in connection with your application or continuing disability review." § 3.02D. The "period . . . consider[ed] in connecting with [a claimant's] application" must naturally refer to the time a claimant alleges disability onset, while "continuing disability review" is best understood as the time after the application is filed but before a decision is rendered. Plaintiff's interpretation

1   impermissibly ignores this language.  *See United States v. Nature*, 898 F.3d 1022,

2   1024 (9th Cir. 2018) ("We construe regulations, like statutes, to give effect to

3   every word when possible.").  Thus, the relevant period assessed was between

4   December 31, 2017 (the date of onset) through February 27, 2023 (the date of the

5   ALJ's decision).

6          Plaintiff's first hospitalization was in March 2017—months before her

7   alleged disability onset at the end of December.  Excluding the March

8   hospitalization, Plaintiff was admitted for 48-hour periods on multiple occasions

9   between December 2017 through February 2018.  However, the December

10  hospitalizations all took place before the alleged disability onset on December 31.

11  Thus, under the requirements of the Listing, Plaintiff was only hospitalized twice,

12  and each period was not the requisite 30 days apart.  Accordingly, the Court finds

13  that the ALJ properly determined that Plaintiff had not met Listing 3.02.

**II.    Subjective Symptom Testimony**

15         Plaintiff alleges that the ALJ erred in evaluating her physical and mental

16  subjective symptom testimony.  ECF No. 9 at 4-13.

17         An ALJ engages in a two-step analysis to determine whether to discount a

18  claimant's subjective symptom testimony.  SSR 16-3p, 2016 WL 1119029, at *2.

19  "First, the ALJ must determine whether there is 'objective medical evidence of an

20  underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged.'" *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "The claimant is not required to show that [the claimant's] impairment 'could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.*  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7-*8; 20 C.F.R. § 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record" in order "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

### A.   Physical Symptoms

In his initial ruling, the ALJ concluded that Plaintiff's objective medical evidence, failure to follow treatment, and work history did not support her subjective symptom testimony.  Tr. 1269-78.  This Court found that the ALJ's analysis of the objective medical evidence was unsupported by substantial evidence.  First, the Court determined that the ALJ's decision misfocused on Plaintiff's "normal" bodily functions which did not pertain to her impairments— for instance, her gait and spine, which had nothing to do with her lung and gynecological disorders.  *Id.* at 1270.  Second, the Court concluded that the ALJ erred in relying on Plaintiff's few brief instances of respite from her pulmonary condition as evidence that the condition was merely "benign" when the

1  longitudinal record as a whole suggested "a sustained period of impairment." *Id.* at

2  1271-72.

3      This Court also found that the ALJ's analysis regarding Plaintiff's failure to

4  follow treatment for her pulmonary condition and endometriosis was unsupported

5  by clear and convincing evidence. *Id.* at 1273-74.  Respecting Plaintiff's

6  pulmonary condition, the ALJ identified Plaintiff's failure to undergo lung surgery

7  for spontaneous pneumothorax of the left lung and failure to stop smoking

8  cigarettes as evidence of her noncompliance with prescribed treatment.  *Id.*

9  However, this Court explained that the surgery was only recommended and the

10 ALJ failed to account for Plaintiff's reported fear of surgery.  *Id.*  The Court also

11 described that the Ninth Circuit and Social Security regulations do not require

12 lifestyle modifications, including smoking cessation, for claimants to comply with

13 prescribed treatment.  *Id.* at 1274.

14     Regarding Plaintiff's endometriosis, the ALJ had noted that Plaintiff was

15 "lost to follow-up."  *Id.*  The Court asked the ALJ to clarify what specific treatment

16 Plaintiff failed to follow, as the record on the whole demonstrated Plaintiff sought

17 continuing care for her condition.  *Id.*  The Court also instructed the ALJ to

18 account for whether Plaintiff's improvements respecting her diagnosis might be

19 attributed to her pregnancy.  *Id.*

20 *//*

Finally, the Court found the ALJ's analysis of Plaintiff's work history unpersuasive. *Id.* at 1277.  The Court observed that while Plaintiff had assumed some employment during the period of her alleged disability which suggested her level of impairment was not severe, the ALJ had failed to address that Plaintiff's periods of employment tended to be truncated and failed to discern whether Plaintiff's similar work history prior to the onset of disability pertained to the possibility that Plaintiff was unmotivated to work—which would be a permissible reason to discredit a claimant's testimony—or some other unexplained factor. *Id.* at 1277-78.

On remand, the new ALJ determined that some of Plaintiff's medically determinable impairments could be reasonably expected to produce her alleged physical symptoms but that her claims concerning the intensity, persistence, and limiting effects of those symptoms were inconsistent with the medical evidence and other record evidence.  Tr. 1173.

### i.  Pulmonary Symptoms

Plaintiff first challenges the ALJ's findings regarding her pulmonary health on the basis that the ALJ again singled out impermanent periods of improvement

against an otherwise extensive record of impairments.[1]  ECF No. 9 at 4-5.  The Court agrees that the ALJ's second analysis of the objective medical evidence of Plaintiff's pulmonary symptoms was only partially curative.  Plaintiff complains that the ALJ's second order mostly restates the findings of the first regarding her medical history.  ECF No. 9 at 5.  Given that Plaintiff's medical history did not significantly change, however, it is unsurprising that many of the findings

---

[1] As a threshold but non-dispositive matter, Plaintiff also argues that the ALJ "violated the law of the case doctrine," which prohibits a court from reconsidering an issue already decided by the same court or a higher court in the same case.  ECF Nos. 9 at 4-5; 14 at 4-5.  Plaintiff contends that the ALJ violated this by copying the previous ALJ's findings.  The ALJ's alleged noncompliance with this Court's order does not violate this doctrine because the Court did not come to a conclusive determination about Plaintiff's disability; instead, it remanded the matter for the ALJ to reconsider.  *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018) (explaining that the rule precludes lower courts from reconsidering matters previously decided by a higher court).  Similarly, because the matter was before the ALJ on remand, the Court cannot say it violated some principle of preclusion for the ALJ to reconsider the issues and draw the same conclusions, even if those findings were legally erroneous.

overlapped.  *Compare* Tr. 1233-35 (first order on objective medical evidence) *with*

Tr. 1174-75 (second order).  On remand, the ALJ added the following new

findings:

- [D]uring a follow-up visit in February 2018, Madhan Kumar Kuppusamy, MD[,] noted the claimant was doing well and had no evidence of infection, recurrent pneumothorax or effusions after a recent admission for pleuritic chest pain after moving heavy furniture at home.  He advised the claimant on smoking cessation, continued walking, and the avoidance of heavy lifting.  He advised the claimant to follow-up in three months.  He noted the claimant would likely continue to improve over the following three to four months.

- [O]n exam [in February 2019] the claimant was in no distress.  She had normal respiratory effort, equal expansion, clear and equal breath sounds, and no wheezes rales or rhonchi.

- [Plaintiff] had some noted improvement in symptoms while maintaining a pregnancy . . . Later that same month, she reported shortness of breath at night mostly dependent on her positioning.  She reported improvement in symptoms with lying on her side with pillows.  However, she denied any episodes of pneumothorax during her pregnancy or shortness of breath when awake or with activity.

- A subsequent exam in May 2022 showed normal respiratory findings including lungs clear to auscultation without wheezes, rhonchi, or rales, normal excursion, and no accessory muscle use and no stridor.

- However, in August 2022, the claimant reported dyspnea for the past few years.  She felt dyspenic with minimal activity like talking and walking.  She reported she had a 2-year-old son and felt she could not keep up with him or play with him the way she would like.  Yet, she was reportedly smoking five cigarettes per day, previously one pack per day.  On exam, she was seated comfortably, pleasant and in no acute distress.  She spoke in full sentences and was breathing

1
2
3
4
5

> comfortably. A CT of the chest was unremarkable and showed no
> pneumothorax. Cassandra Rosello, MD . . . indicated overall the
> claimant was doing well without known recurrence of
> pneumothorax in the last several years. Nevertheless, the
> undersigned accounts for the claimant's pulmonary complaints in
> the [RFC] by assessing environmental limitations including
> avoiding concentrated exposure to extreme heat, humidity, and
> pulmonary irritants.

6    Tr. 1174-75.

7          As instructed, on remand the ALJ omitted reference to "normal" physical

8    functions having no relation to Plaintiff's reported impairments (for instance, her

9    gait) and accounted for her pregnancy as a possible factor supporting her improved

10   pulmonary condition in 2020. *Id.* Additionally, while the ALJ referenced doctors'

11   recommendations that Plaintiff quit smoking, the ALJ did not find that Plaintiff's

12   continued smoking constituted failure to comply with her prescribed treatment for

13   pulmonary impairments. *Id.*

14         Plaintiff continues to assert that the new findings were dismissive of the

15   broader longitudinal record, stating that the ALJ singled out periods of temporary

16   well-being and ignored her extensive history of surgery, hospitalizations, and other

17   symptoms of respiratory distress. ECF No. 9 at 5. The Court agrees. The crux of

18   the ALJ's added and prior findings—and the Commissioner's argument now on

19   appeal—suggest that the Plaintiff experienced improvements in her pulmonary

20   condition with treatment. ECF No. 13 at 1 ("Plaintiff had significant breathing

1    issues prior to the period at issue that have seemed to lessened with treatment"); 7

2    ("Plaintiff did not have any severe exacerbations after the beginning of the period

3    at issue."). Although "evidence of medical treatment successfully relieving

4    symptoms can undermine a claim of disability," *Wellington v. Berryhill*, 878 F.3d

5    867, 876 (citing 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1)), the Ninth Circuit

6    has urged courts to exercise caution in evaluating a claimant's course of treatment,

7    *see Garrison*, 759 F.3d at 1017 ("[I]mproved functioning while being treated and

8    while limiting environmental stressors does not always mean that a claimant can

9    function effectively in a workplace.").

10          Here, again, the ALJ did not explain how isolated incidences of

11   improvement were evaluated against the broader landscape of Plaintiff's continued

12   impairments. *See Garrison* at 1018 (ALJs should "describe [a claimant's]

13   symptoms, course of treatment, and bouts of remission, and thereby chart a course

14   of improvement [rather than] singl[ing] out a few periods of temporary well-being

15   from a sustained period of impairment."). For example, the order discusses that on

16   March 19, 2019, Plaintiff's computed tomography (CT) scan images showed no

17   pulmonary embolism or other abnormalities, Tr. 792, 1174, but omits the fact that,

18   days prior, on March 11, patient was evaluated for shortness of breath and chest

19   tightness and sent to the emergency room with low oxygen saturation and

20   symptoms "suggestive of pneumomediastinum and possible pneumoperitoneum,"

Tr. 831-33.  Similarly, as late as August 2022, Plaintiff continued to pursue care for respiratory pains and labored breathing with "minimal activity, like talking and walking."  Tr. 1175.  While the ALJ focuses on the fact that Plaintiff's pneumothorax was in remission at that time, Plaintiff continued to present with mild emphysematous changes in the lungs and the aforementioned complaints.  Tr. 1441.  The evidence presented was selective and the ALJ failed to resolve conflicts in the longitudinal record suggesting that Plaintiff's pulmonary conditions had not subsided.  *See Del Cielo v. Astrue*, 737 F. Supp. 2d 1271, 1276 (E.D. Wash. 2010) ("It is the role of the trier of fact, not this Court, to resolve conflicts in the evidence . . . [but] a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence."); SSR 16-3p, 2016 WL 1119029 at *2 (the ALJ must "consider all of the evidence in an individual's record").

The ALJ also relied on Plaintiff's apparent statements about improvements in her condition to discredit her pulmonary symptom testimony.  As this Court previously dictated, though, Plaintiff's "reported improved respiratory status at times does not conflict with events in the record [indicating] that Plaintiff experienced respiratory distress," including "her testimony that she would get short of breath walking between buildings, taking stairs and [using] riding carts in stores."  Tr. 1271-72.  Again, by the ALJ's own account, these symptoms persisted

as late as August 2022.  Tr. 1745.  The ALJ did not weigh or explain this contradicting evidence such that the Court can confidently conclude that the decision was supported by substantial evidence.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("If the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons . . . without substitution or speculation.").

### ii.    Endometriosis and Gastrointestinal Symptoms

Previously, this Court found that the ALJ improperly determined Plaintiff was noncompliant with her prescribed endometriosis treatment and failed to account for the fact that the improvement in her symptoms was possibly due to her pregnancy.  Tr. 1274.  Plaintiff now faults the ALJ's new order, saying it disregards her reported endometriosis and related gastrointestinal symptoms when the objective medical evidence presented supports her claims.  ECF No. 9 at 7.

In evaluating Plaintiff's endometriosis and gastrointestinal symptoms in the remand order, the ALJ found that Plaintiff's "clinical presentation and treatment" were inconsistent with her reports of being bedridden for two weeks out of the month.  Tr. 1175-76.  The findings summarized that Plaintiff had been suffering from endometriosis since she was 15 and undergone past abdomen surgeries.  Tr. 1175.  The findings further stated that Plaintiff sometimes experienced pelvic and stomach pain, but other times presented without any tenderness, pain, or stomach

distension.  *Id.*  The ALJ also noted that Plaintiff's pain was worse with her menstrual cycle, but her exams returned normal.  *Id.* at 1176.  In January 2023, Plaintiff's doctor, Katherine Roberts, recommended hormonal birth control or an intrauterine device (IUD) as potential treatment options, and Plaintiff agreed to return for IUD placement.  *Id.*  The ALJ also observed that claimant's allegation of being bedridden several weeks out of the month lacked any corresponding evidence in the record, and that Plaintiff had not sought treatment in recent years. *Id.*

Plaintiff does not allege that this medical summary is incomplete, but instead argues that the objective evidence cited buoyed her claims of incapacity more than it undercut them.  ECF No. 9 at 10.  The Court does not share Plaintiff's belief that the ALJ was required to credit her statements simply because some of the evidence in the record tended to support her claims, especially where there was other evidence referenced that cut against those allegations, including the fact that Plaintiff had not pursued further treatment for a period of years.  *Magallanes v. Bowen*, 881 F.2d 747, 749 (9th Cir. 1989) ("The ALJ is responsible for . . . resolving conflicts in medical testimony.  We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."); *Del Cielo*, 737 F. Supp. 2d at 1279 ("An unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on a claimant's sincerity.").  As such,

the Court concludes the ALJ's resolution of Plaintiff's endometriosis and gastrointestinal symptom testimony was supported by clear and convincing evidence.

### iii.   Hand and Wrist Symptoms

Plaintiff also alleges that the ALJ erred in dismissing her carpal tunnel syndrome (CTS) and related hand and wrist symptoms by ignoring medical evidence which supported her complaints and improperly relying upon her inconsistent work history, and other activities of daily living. ECF No. 9 at 11. In its prior order, this Court determined that the ALJ erred in finding Plaintiff's CTS non-severe at Step Two on the basis that Plaintiff had not obtained a recommended nerve conduction study in November 2018 because the clinic failed to make the referral and Plaintiff had a reasonable fear of surgery. Tr. 1265. Additionally, the Court found that the ALJ failed to resolve conflicting medical evidence where Plaintiff presented with swollen wrist, positive Tinel's testing, and difficulty carrying out daily tasks. *Id.* at 1266.

At Step Three, this Court ruled that Plaintiff's dotted work history did not undercut her symptoms of hand/wrist and gastrointestinal pain because some of her short-lived employment occurred during the period she was alleging disability and the ALJ undertook no effort to discern whether Plaintiff's employment history

1  prior to the onset of disability was because she had no propensity to work or

2  instead because of some other factors.  Tr. 1277-78.

3      As in its prior order, the Court here concludes that the ALJ's focus on

4  Plaintiff's work history and activities of daily living was improper, as was her

5  apparent reliance on Plaintiff's failure to undergo a recommended nerve

6  conduction study.  Tr. 1176-77.

7      Regarding Plaintiff's work history and daily activities, the ALJ observed:

8      Although the claimant has indicated some difficulty with daily
       activities due to hand aching and swelling, the record shows she
9      continued to drive during the relevant period.  The record also
       documents work activity as a part-time waitress/bartender, and recently
10     as a cashier.  She testified that she no longer drives.  The undersigned
       accounts for the claimants hand complaints by limiting her bilateral
11     upper extremity gross handling to frequent in the [RFC].

12  Tr. 1177.

13      This Court previously stressed that any discussion of Plaintiff's work history

14  needed to account for the duration of the employment and whether the job was

15  held during Plaintiff's alleged period of disability.  *Lingenfelter v. Astrue*, 504 F.3d

16  at 1039 (ALJs may not discredit claimants who try to work during the period of

17  alleged disability but fail to retain employment due to their disability).

18      At the hearing, Plaintiff testified that her most recent job was as a part-time

19  cashier at Express Mart, and that it ended within a few months.  Tr. 1198-99.  She

20  added that the only reason she had been hired in the first place was due to the fact

1  that the business was owned by a family friend who wanted to help her, but that

2  she was let go due to the interference of her symptoms with her work. *Id.* at 1199-

3  200, 1210. Prior to that, Plaintiff worked part time at a pizza parlor for another

4  friend, but added that the business was shutting down so she primarily sat behind

5  the counter and occasionally made drinks. *Id.* at 1200. Plaintiff testified that her

6  hand pain and gastrointestinal issues hindered her work performance and kept her

7  from maintaining a job in recent years. *Id.* at 1205-06. Because the ALJ failed to

8  account for this fact or to consider whether Plaintiff's employment prior to the

9  alleged onset of disability had any bearing on her analysis, Plaintiff's work history

10  did not support a finding that her CTS symptoms were not as alleged.

11  Likewise, Plaintiff's activities of daily living, including driving, did not

12  support an adverse credibility finding. The Ninth Circuit has warned lower courts

13  to exercise caution in making an adverse finding on the basis of a claimant's

14  activities of daily living. *Garrison*, 759 F.3d at 1016. The ALJ did not inquire

15  after or include any information about the frequency of Plaintiff's driving. Tr.

16  1177. Additionally, the ALJ fixated on Plaintiff's driving without discussing

17  Plaintiff's allegation that her hand and wrist symptoms interfered with her other

18  daily activities, including her ability to dress herself during a flare-up or

19  consistently contribute to household chores. Tr. 1206-09.

20  //

The ALJ also mentioned Plaintiff's failure to undergo a recommended nerve conduction study for surgical purposes in November 2018 and in December 2020. Tr. 1176, ¶¶ 1, 3.  As the Court previously noted, however, Plaintiff had not received a referral for the November 2018 study.  Respecting the failure to undergo later nerve conduction studies, Plaintiff contends that she did complete a study. *See* ECF No. 9 at 15 (citing Tr. 1479).  However, the test Plaintiff references is not actually in the record but was simply reported by Plaintiff to a treatment provider. Tr. 1485.  Additionally, the study only showed Plaintiff was positive for CTS, which the ALJ credited as true.  Nevertheless, the ALJ's reference to Plaintiff's failure to undergo a nerve conduction study in November 2018 was error.  *See* Tr. 1265.

These errors were not harmless.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 .3d 1050, 1055 (9th Cir. 2006) (the harmless error doctrine applies "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion").  As discussed below, the ALJ relied upon her findings pertaining to Plaintiff's non-participation in a nerve/EMG study and daily life activities and work history to discredit the opinion of Doctors Wayne Hurley and Patrick Metoyer.  *See* Part III, §§ A, C.

//

//

**B.    Mental Symptoms**

The Court previously found that the ALJ's determination of Plaintiff's mental impairments were supported by substantial evidence. *See* Tr. 1273, 1276. However, Plaintiff asks the Court to reconsider, asserting that the record has been developed since remand. ECF No. 9 at 13. Notably, Plaintiff alleges that the second hearing clarified that Plaintiff had difficulty accessing mental health care due to a shortage of counselors and also because the prescribed medication she formerly took was not intended to be used on a long-term, daily basis. *Id.* However, Plaintiff's testimony at trial on this point was rather vague and unsupported by any other documents in the record:

Q.  Are you in counseling?

A.  We have a shortage here for that.  Our mental health is really short-staffed right now, so it's really hard to get help here.

Q.  How long were you on mental health medications?

A.  A year.

Q.  Okay.

A.  Every time they would have me go to the hospital, they would give me like a shot that would calm me down.  Then, my primary gave me a prescription for it, but I had to find a new doctor.  It took me time to even find a new doctor.  I not too long ago got in.  I was on the waiting list for six to eight months.

Tr. 1214.

1   Respecting Plaintiff's ability to see a counselor, her testimony does not

2   clarify who she attempted to establish care with, what offices she identified that

3   were busy, or whether she attempted to even get on a waitlist for counseling in the

4   first instance.  As to Plaintiff's discussion of her time spent on a waitlist to obtain

5   her prescription, that appears to have had more to do with Plaintiff's physical

6   symptoms (given the reference to the hospital) and pursuit of a different provider

7   than her inability to obtain a prescription.  On these facts, the Court does not find

8   that Plaintiff introduced any new evidence into the record that would alter its

9   former analysis.

10  **III.    Opinions of Treating Doctors**

11  Plaintiff urges that the ALJ erred by failing to appropriately assess the

12  medical opinions of Doctors Hurley, Kuppusamy, and Metoyer.  ECF No. 9 at 14-

13  22.  This Court previously remanded for the Commissioner to reevaluate Dr.

14  Hurley's opinion, reassess Dr. Metoyer's opinion, and assess Dr. Kuppusamy's

15  opinion (which the ALJ did not formerly address).  Tr. 1283-84.

16  As indicated in the underlying opinion, the new regulations apply to the

17  ALJ's evaluation of medical opinion evidence.  20 C.F.R. § 404.1520c; *see also*

18  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL

19  168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).  The ALJ applied the new

20

regulations because Plaintiff filed her Title II claim after March 27, 2017. *See* Tr. 1266.

Under the new regulations, the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s)." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5867–68 (codified at 20 C.F.R. pt. 404). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a)-(b).

The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)-(5). The ALJ is required to explain how the most important factors, supportability and consistency, were considered. 20 C.F.R. § 404.1520c(b)(2). These factors are defined as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical

finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(2). However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the most persuasive factors" were considered. 20 C.F.R. § 404.1520c(b)(3).

These regulations displace the Ninth Circuit's standard requiring an ALJ to provide "specific and legitimate" reasons for rejecting an examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). As a result, the ALJ's decision for discrediting any medical opinion "must simply be supported by substantial evidence." *Id.*

### A. Opinion of Dr. Hurley

Plaintiff challenges the second ALJ's assessment of Dr. Wayne Hurley's medical opinion, which the ALJ found partially persuasive. Tr. 1179-80. Plaintiff

argues that the ALJ impermissibly rejected Dr. Hurley's opinion respecting her

hand/wrist complaints.  ECF No. 9 at 14-15.  On that issue, the ALJ wrote:

> Dr. Hurley opined that the claimant was limited to occasional bilateral
> handling due to wrist pain from carpal tunnel syndrome.  The
> undersigned finds his manipulative assessment unpersuasive.  His
> opinion is not supported by the objective medical evidence of record.
> As noted, there is no EMG/nerve conduction studies in the record.
> Physical exams show some mild edema on occasion.  However, she has
> full grip strength and full active range of motion on exams.  She also
> continued to drive during the relevant period and worked part-time.  For
> these reasons, the undersigned finds the assessment by Dr. Virji of
> bilateral handling limited to frequent persuasive.  His opinion is
> supported by the medical evidence.  The claimant has some noted
> tenderness and mild edema.  However, she otherwise has normal exams
> including 5/5 grip strength.  Her symptoms respond to cortisone
> injections.  She has declined surgical intervention.  Although the
> claimant has alleged limited hand functioning, her allegations are not
> entirely consistent with her clinical presentation, treatment, and
> activities.  Nevertheless, the undersigned fully accounts for the
> claimant's CTS/hand complaints in the [RFC].

Tr. 1179-80.

This opinion is unsupportable and inconsistent with the record because it

rests on impermissible assumptions regarding Plaintiff's activities of daily living,

including her part-time work activity, and fails to account for why Plaintiff failed

to participate in an EMG/nerve conduction study, at least in November 2018.  The

Court cannot determine that these errors did not materially inform the ALJ's

assessment of Dr. Hurley's opinion or were not otherwise prejudicial to Plaintiff,

as the RFC did not limit Plaintiff's bilateral upper strength to occasional handling.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

### B.   Opinion of Dr. Kuppusamy

The former ALJ failed to address Dr. Madhan Kumar Kuppusamy's opinion regarding Plaintiff's lifting limitations.  Tr. 1283.  After Plaintiff's surgery in 2017, Dr. Kuppusamy prohibited Plaintiff for work for two weeks and limited her from lifting more than ten pounds at a time.  *Id.*  Plaintiff argued—and now realleges—that Dr. Kuppusamy's restriction on her lifting more than ten pounds was intended to be an indefinite restriction and that such a limitation was inconsistent with the jobs identified by the VE.  ECF No. 9 at 17-19.  Respecting Dr. Kuppusamy's opinion, the ALJ found the weight lift restriction to be "partially supported" in view of the fact that Plaintiff had recently undergone surgery and sought follow-up after lifting heavy furniture, adding that, at a follow-up visit, he indicated that "[h]e expected additional improvement in symptoms over the following three months, which suggests that his limitation of lifting no more than 10 pounds was only temporary in nature."  Tr. 1180.  She further added that "his opinion is also not completely consistent with subsequent exams showing full strength or the claimant's subsequent work activity at the light exertion level."  *Id.*

The Court agrees that interpreting Dr. Kuppusamy's medical opinion as imposing an indefinite ten-pound lifting limitation upon Plaintiff would prove inconsistent with the medical records and larger context surrounding the initial visit as well as Plaintiff's follow-up (namely, that Plaintiff was recovering from

surgery and had been moving various objects).  Again, it is the ALJ's prerogative to resolve ambiguous or potentially conflicting evidence in the record.  As to the ALJ's discussion of Plaintiff's subsequent work activity, that appears to have been a secondary consideration for rejecting Dr. Kuppusamy's testimony.

### C.    Opinion of Dr. Metoyer

Finally, Plaintiff challenges the opinion of Dr. Patrick Metoyer, who performed a mental health evaluation of Plaintiff.  ECF No. 9 at 20-21; Tr. 450. The ALJ found Dr. Metoyer's assessment was unsupported by her recent work history and ability to perform personal care.  Tr. 1181.

The Court agrees with Plaintiff that her work history and personal care routines or activities of daily living did not provide an appropriate basis for the ALJ to reject Dr. Metoyer's testimony.  As to the workplace concerns, the ALJ wrote that "her job losses [were attributed] to the frequency of bathroom breaks and not mental health."  While Dr. Metoyer may not have been qualified to opine on Plaintiff's job losses, given that they were due to her physical impairments, the ALJ's reliance on Plaintiff's personal care activities as a basis for finding his opinion unsupported was misplaced.  Specifically, Dr. Metoyer wrote:

> Claimant reports no significant difficulty with personal care and hygiene.  She notes she gets fatigued faster, takes a little bit longer, but is able to engage in those routines.  Claimant notes some difficulty with other activities around the house—cooking, cleaning, shopping, and laundry.  She notes that she does not carry heavy objects, that she paces

1    herself, and takes frequent breaks.  Claimant reports some difficulty
2    managing money, creating a budget, and paying bills.

3    Tr. 453.

4        The ALJ discredited this evidence on the basis that Plaintiff reported "no

5    significant difficulty," noting that "[s]he reportedly took a little longer but was able

6    to engage in those routines . . . [and] to see her friends about once a month."  Tr.

7    1181.  As discussed, a claimant's ability to engage in basic, daily activities—for

8    instance, dressing oneself—does not undercut a finding of disability.  *Garrison*,

9    759 F.3d at 1016.  The ability to get dressed, perform some household tasks while

10   taking frequent breaks, and occasionally visit with friends, supports Plaintiff's

11   testimony that she was unable to walk far or talk for long periods without breathing

12   troubles or taking a restroom break and that she could not lift heavy objects.  As

13   such, the ALJ erred in her assessment of Dr. Metoyer's testimony.

14   **IV.  Remedy**

15       The Court finds a remand for benefits is warranted.  Under the Ninth

16   Circuit's "credit-as-true" rule, a remand for an award of benefits is appropriate

17   when:

18       (1) the record has been fully developed and further administrative
19       proceedings would serve no useful purpose; (2) the ALJ has failed to
         provide legally sufficient reasons for rejecting evidence, whether
         claimant testimony or medical opinion; and (3) if the improperly
20       discredited evidence were credited as true, the ALJ would be required
         to find the claimant disabled on remand.

ORDER REVERSING COMMISSIONER'S DENIAL OF BENEFITS ~ 33

1   *Garrison*, 759 F.3d at 1021-22.  When the above conditions are satisfied, a remand

2   for benefits must be ordered unless "the record as a whole creates serious doubt as

3   to whether the claimant is, in fact, disabled within the meaning of the Social

4   Security Act." *Id.* at 1022.

5        In this case, the record has been fully developed.  Two telephonic hearings

6   have been held, and a wealth of evidence from different treatment providers has

7   been accepted.  At this stage, "the only purpose that further proceedings could

8   possibly serve is to afford the ALJ an opportunity to revise her [conclusions]."

9   *Guthrie v. Colvin*, No. 13-CV-3069-TOR, 2014 WL 3640756, at *5 (E.D. Wash.

10  July 23, 2014).  The Commissioner urges the Court to remand.  ECF No. 13 at 13-

11  14.  However, remanding for this purpose—now for a second time—would be both

12  unfair and inefficient.  *Guthrie*, 2014 WL 3640756, at *5.

13       Second, as discussed, the ALJ failed to provide legally sufficient reasons for

14  rejecting evidence in the record—now for the second time.  Third, crediting as true

15  Plaintiff's complaints, the ALJ would be required to find her disabled on remand.

16  Plaintiff alleged severe pulmonary complaints which interfered with her ability to

17  maintain employment and complete daily, simple tasks.  The VE testified that the

18  number of breaks Plaintiff averred she required due to these physical impairments

19  precluded her from competitive employment.  Tr. 1220.  Accordingly, Plaintiff is

20  entitled to benefits.

ORDER REVERSING COMMISSIONER'S DENIAL OF BENEFITS ~ 34

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 9) is **GRANTED**.

2. This action is **REVERSED** and **REMANDED** to the Commissioner for calculation and award of benefits. Plaintiff may apply for attorney's fees and costs by separate motion without moving to reopen the file.

3. The Commissioner's Brief (ECF No. 13) is **DENIED**.

The District Court Executive is directed to file this Order, enter judgment for Plaintiff, furnish copies to counsel, and **CLOSE** the file.

DATED November 2, 2023.



THOMAS O. RICE
United States District Judge